# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EMMA PAZ,

        Plaintiff,

v.                                                        Case No:   6:22-cv-834-RBD-LHP

SALSAS OF TITUSVILLE
CORPORATION and JESUS
VALENCIA,

        Defendants

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following

motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION TO ENFORCE SETTLEMENT AGREEMENT/MOTION TO APPROVE SETTLEMENT AGREEMENT AND MOTION FOR ADDITIONAL ATTORNEY FEES AND COSTS OR IN THE ALTERNATIVE MOTION TO STRIKE DEFENDANTS' PLEADINGS (Doc. No. 82)** |
| **FILED:** | **October 25, 2023** |

> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The history of this case is somewhat tortured, and a detailed recitation is necessary for purposes of recommending the appropriate relief.

### A.    *Initial Litigation Through Final Pretrial Conference*

This lawsuit has been pending since May 3, 2022, when Plaintiff Emma Paz ("Paz") filed a complaint against Defendants Salsas of Titusville ("Salsas") and Jesus Valencia ("Valencia") alleging violations of the overtime compensation provisions and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*   Doc. No. 1.   On May 31, 2022, Defendants answered the complaint, which answer was signed and filed by their Attorney, Robert E. Blanchfield.   Doc. No. 9.   Attorney Blanchfield has represented Defendants throughout the entirety of this litigation.

The case proceeded as required by the FLSA Scheduling Order (Doc. No. 13), but the parties were unable to resolve the case.   Accordingly, a Case Management and Scheduling Order ("CMSO") issued on November 1, 2022.   Doc. No. 27.   On the second page of the CMSO, under a section entitled "Sanctions," the Order provides that "[t]he parties are cautioned that the Court will diligently enforce this CMSO, and—when necessary—will exercise its inherent and explicit authority to sanction parties and attorneys who violate the letter or spirit of the Court's Rules

and Orders."  *Id.*, at 2 (referencing, *inter alia*, 28 U.S.C. § 1927; Fed. R. Civ. P. 11(c), 16(f), 26(g)(3), 37, 41(b), and 83).

Litigation continued; the case failed to resolve at private mediation (Doc. Nos. 41–42), and Paz unsuccessfully sought class certification.   Doc. Nos. 30-31, 44, 49.[1] Paz eventually moved for partial summary judgment against Salsas only.   Doc. No. 48.   Despite being represented by counsel,[2] Salsas did not respond to the motion. Upon review, United States District Judge Roy B. Dalton, Jr. granted the motion, holding it was established for trial that Paz was employed by Salsas, that she was covered by the FLSA, and that she worked more than 40 hours in at least one workweek.   Doc. No. 50, at 3-4.   Judge Dalton further held, based on Salsas' corporate representative being unable to answer key questions during his deposition, that the only party who could introduce evidence concerning Paz's dates of employment, pay, or hours worked, was Paz herself.  *Id.*  Trial was accordingly set to proceed with respect to the overtime claim against Salsas on the sole issue of whether Salsas paid Paz overtime for the weeks she worked over 40 hours.  *Id.*  Trial would also proceed on all issues relating to the individual

---

[1] As became a pattern in this case, Defendants initially failed to respond to Paz's motion for class certification, which necessitated an Order to Show Cause, along with an admonishment from United States District Judge Roy B. Dalton to review the docket more carefully in the future.   Doc. Nos. 39, 40, 43.

[2] By this time Salsas was represented by both Attorney Blanchfield and another attorney, Jason Harr.  *See* Doc. No. 45.

overtime claim against Valencia and the wrongful discharge/retaliation claim against Salsas.   *Id.*

Litigation continued, with the final pretrial conference scheduled for August 17, 2023.   Doc. No. 27.   Two days before that conference, on August 15, 2023, Paz filed her first motion seeking to enforce settlement agreement and for attorneys' fees and costs.   Doc. No. 58.   In sum, Paz contended that six (6) months prior, on February 16, 2023, the parties settled all claims, the terms of which were memorialized via an email, and that Defendants to date had failed to comply with the settlement.   *Id.*   After hearing from the parties at the final pretrial conference, Judge Dalton referred Paz's motion to the undersigned to conduct an evidentiary hearing and issue a report and recommendation.   Doc. No. 63.   Judge Dalton also granted co-counsel Jason Harr's motion to withdraw, noting that Attorney Blanchfield would continue to represent Defendants, and removed the case from the trial calendar.   *Id.   See also* Doc. No. 68.

   B.   *Litigation Relating to Paz's First Motion to Enforce Settlement (Doc. No. 58).*

Since August 17, 2023, the undersigned has endeavored to conduct the evidentiary hearing and/or resolve this case through alternative means, unfortunately without success and primarily due to the conduct of Defendants. First, the undersigned conducted a status conference with counsel for all parties on August 28, 2023.   Doc. Nos. 65, 70, 71.   During that conference the parties

represented that a settlement had been reached, under the terms listed in Paz's then-pending motion.   Based on these representations and in an effort to move this case forward without additional delays, the undersigned set the matter for an in-person evidentiary hearing on September 27, 2023, directed Defendants to file a response to Paz's motion to enforce settlement (Doc. No. 58), and authorized Paz to file a reply.   Doc. No. 73; *see* also Doc. No. 75.   In particular, the undersigned directed the parties to include certain information in their filings:

> The parties represented at the status conference that they have settled this matter, under the terms listed in the pending motion.   To the extent that representation remains correct, Defendants' response and Plaintiff's reply shall also request settlement approval under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). The filings shall be supported by a copy of the fully executed settlement agreement and explain the amount of wages Plaintiff claimed to be owed, whether and to what extent Plaintiff compromised her claims, whether the amount of attorney's fees and costs was agreed upon separately and without regard to the amount Plaintiff agreed to accept, and, if not, evidence that the attorney's fees and costs to be paid under the settlement are reasonable.   If the parties have agreed to any additional terms such as a broad or general release, or confidentiality, nondisparagement, or no re-employment provisions, counsel must explain why such provisions do not impact the reasonableness and fairness of the settlement amount.   The parties shall also disclose whether or not the parties have entered into any agreement (whether oral or in writing) that has not been disclosed to the Court and (a) is in any way related to this action or (b) otherwise contains a release extending beyond the FLSA claims in this action, contains a confidentiality provision, or contains a non-disparagement provision. If the parties have not executed a settlement agreement by the time their respective filings are due, the parties shall explain to the Court why that has not yet occurred, and when an agreement will be fully executed.

Doc. No. 73, at 2-3.

But despite providing Defendants an extension of time to file their response, on September 13, 2023, the undersigned struck Defendants' response for failure to comply with the undersigned's Order and with the Local Rules.   Doc. No. 77.   In particular, the response failed to include any of the information requested by the undersigned, and instead challenged Paz's request for fees for filing her motion to enforce settlement.   *See* Doc. No. 76.   Defendants never refiled, nor sought leave to refile, a compliant response.[3]   In the September 13, 2023 Order, the undersigned also reminded the parties that the September 27, 2023 evidentiary hearing remained as scheduled, and provided the parties until September 19, 2023 to file a joint motion to approve settlement that complied in full with the undersigned's August 28, 2023 Order.   Doc. No. 77.

On September 19, 2023, the parties filed a Joint Notice of Settlement, and requested additional time to finalize and submit an executed settlement agreement. Doc. No. 78.   Based on the representations in that notice, the undersigned canceled the September 27, 2023 evidentiary hearing and afforded the parties until October 11, 2023 to file their joint motion to approve their FLSA settlement.   Doc. No. 79. Defendants requested an additional extension of time, based on Attorney

---

[3] Because Defendants never filed a response, Paz never filed a reply brief.

Blanchfield's medical issues and his apparent inability to reach Defendants who "often travel to Mexico and usually do not have access to phone or internet service." Doc. No. 80, at 2.   The undersigned granted the request and extended the deadline to October 25, 2023.   Doc. No. 81.   But once again, the parties were not able to settle the case by this extended deadline.

    C.    *Litigation Relating to Paz's Renewed Motion (Doc. No. 82).*

Instead, on October 25, 2023, Paz filed the above-styled renewed motion to enforce settlement agreement, to approve the settlement agreement under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), and for additional attorneys' fees and costs, or in the alternative to strike Defendants' pleadings based on Defendants' failure to litigate this case in good faith.   Doc. No. 82.

In this motion, Paz details her attempts to enforce a settlement in this case, but claims that such efforts have been stymied by Defendants and their counsel. To wit, Plaintiff contends that she accepted Defendants' original settlement offer on February 16, 2023, but the very next day Attorney Blanchfield notified Paz's counsel that he would be withdrawing and that Defendants did not agree a settlement had been reached.   *Id.*, at 2. [4]   Subsequently, both co-counsel Jason Harr and

_____

[4] A review of the docket shows that Attorney Blanchfield never moved to withdraw until his February 8, 2024 motion, which is addressed below.   Doc. No. 119.

Defendants' corporate representative stated to Paz that no settlement had been reached.   *Id.*, at 2-3.   However, on or about July 31, 2023 – after partial summary judgment in Paz's favor had been granted – Defendants apparently changed their minds and agreed that a settlement had been reached, but failed to take any further steps to memorialize or comply with the settlement or seek Court approval.   *Id.*, at 3-4.   The parties engaged in further settlement negotiations, but "no compliance from Defendant[s] was obtained with regards to the settlement."   *Id.*, at 4.   As stated in the motion, the parties then filed their September 19, 2023 joint notice of settlement, with Paz ultimately agreeing to give Defendants even more time to finalize a settlement agreement.   *Id.*, at 5.   Paz contends that Attorney Blanchfield eventually told Paz that Defendants would pay "the settlement amount" but needed more time.   *Id.*   However, as of the date of the filing of the motion, Defendants have refused to sign a settlement agreement or make any payments. *Id.*

In support of her renewed motion, Paz attaches copies of a February 16, 2023 email drafted by her counsel, which she contends lists all of the essential settlement terms that the parties agreed to, along with a portion of Salsas' Fed. R. Civ. P. 30(b)(6) corporate representative deposition, in which the corporate representative testified that no settlement had been reached.   Doc. Nos. 82-1, 82-3, 82-4.[5]   In terms

---

[5] Paz also attaches the email from Attorney Blanchfield in which he represented

of relief, Paz requests that the Court enforce the settlement under the terms set forth in the February 16, 2023 email plus award all requested attorneys' fees, and approve the settlement as fair and reasonable under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).   Doc. No. 82, at 14.   Alternatively, Paz contends that Defendants have failed to litigate this case in good faith, and therefore ask that Defendants' pleadings be stricken.   *Id.*, at 14-15.

The undersigned directed Defendants to file a response to Plaintiff's renewed motion by November 8, 2023.   Doc. No. 83.   Again, Defendants failed to comply, and to date have never responded to the motion nor sought an extension of time to do so. [6]   While not excusing this failure to comply, the undersigned chose not to initiate collateral litigation and refrained from levying sanctions against Defendants at that time.[7]

---

that Defendants obtained new counsel, along with billing records to support the requested attorneys' fees.   Doc. Nos. 82-2, 82-5, 82-6.

[6]   In the Local Rule 3.01(g) conferral certification, Paz states that Attorney Blanchfield represented that Defendants agreed to a settlement, but "oppose when the settlement reached is owed," as well as oppose "any award of additional attorney's fee and costs."   Doc. No. 82, at 15.

[7]   Although the undersigned notes that Plaintiff's renewed motion could be treated as unopposed, as discussed in more detail below, the undersigned determined that the evidence submitted in support of that motion (a lone email containing contingent and incomplete terms) was insufficient by itself to resolve whether a settlement had been reached.   *See* Doc. No. 82.   Thus, the need for an evidentiary hearing and the submission of witness testimony.   *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) ("Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, or where there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an

1.      *The December 8, 2023 Evidentiary Hearing*

Instead, the undersigned rescheduled the evidentiary hearing on Paz's renewed motion for settlement enforcement for December 8, 2023 at 10:00 a.m. Doc. No. 85.   In that Order, the undersigned directed that the parties, their counsel, and all witnesses must attend the hearing in person, and further stated that "[i]f any party or witness requires an interpreter for all or part of the hearing, that party shall be responsible for ensuring that a certified interpreter is present for the hearing. The Court will not provide interpreter services."  *Id.*, at 2, 3.   The undersigned warned that failure to comply with that Order or failure to appear at the December 8, 2023 hearing may result in sanctions.   *Id.*, at 4.

Once again, despite the undersigned's warnings and directives, Defendants failed to comply.   Between December 4–7, 2023, Attorney Blanchfield filed a series of motions, each seeking to continue the December 8, 2023 evidentiary hearing. Doc. Nos. 92–93, 101, 103.   In each motion, Attorney Blanchfield stated that he was unable to reach Defendants since some unspecified date in November, and that Valencia and his wife Blanca Valencia often traveled to Mexico and usually did not have access to phone or internet service – no further basis for the requested

---

evidentiary hearing." (quotations and citations omitted)).   However, as also discussed throughout this report and recommendation, the proceedings in this case were delayed and ultimately thwarted by the conduct of Defendants and their counsel, leaving the undersigned no choice but to proceed with Paz's alternative request for relief.

continuance was provided and no alternative dates for the hearing were listed. *See id.* The undersigned denied the motions for a variety of reasons, including failure to comply with applicable Local Rules, failure to provide good cause, and failure to provide any assurances that Defendants would appear if the hearing was again continued. Doc. Nos. 97, 102, 104.[8]

On December 8, 2023, the undersigned attempted to conduct the evidentiary hearing as scheduled. While Plaintiff and one of her attorneys appeared (along with an interpreter), Defendants did not. Doc. Nos. 105-07. Nor did any of Defendants' listed witnesses appear. *Id.*; *see also* Doc. No. 87. The undersigned discussed with Attorney Blanchfield why his clients did not appear as required, and the answers provided were woefully lacking.

For starters, Attorney Blanchfield was unable to identify the names of his clients – he referred to Jesus Valencia as Jesus Hernandez and was unable to explain the discrepancy. Doc. No. 107, at 5, 14; *see also* Doc. Nos. 87, 112. He also referred to Valencia's wife (and apparent co-owner of Salsas) as both Blanca Valencia and Blanca Hernandez, again without clarification. Doc. No. 107, at 14; *see also* Doc. Nos. 87, 112. He was unable to identify the corporate representative for Salsas, and could not explain the relationship between the purported prior corporate

---

[8] The undersigned ultimately told Attorney Blanchfield that the issues raised in his motions could be addressed at the in-person hearing. Doc. No. 104.

representative, Crecencio Prado, and Defendants. *Id.*, at 13-14. He was also unable to explain the whereabouts of Jason Harr, one of his listed witnesses. *Id.*, at 6.[9]

Attorney Blanchfield also was unclear about the extent of his communications with his clients, at one point stating that "some communication breakdown" occurred between him and Valencia starting about a month prior to the hearing, while also representing that he has been working with Valencia and his wife, Blanca Valencia, for several years and they have been "fairly easy to reach." *Id.*, at 7-9; *see also id.*, at 15. And he could only speculate as to his clients' current whereabouts. *Id.*, at 7-9, 15. Importantly, Attorney Blanchfield explained to the undersigned that he has not spoken directly with Valencia at all, because Valencia does not speak English, and Attorney Blanchfield does not speak Spanish. *Id.*, at 14. Rather, he communicates with Valencia through his wife, Blanca Valencia. *Id.*, at 14-15.

Attorney Blanchfield also recited his attempts to reach his clients prior to the December 8, 2023 hearing, noting that the last communication with his clients was approximately 4-6 weeks prior, and that several phone calls and emails from Attorney Blanchfield were not responded to. Doc. No. 107, at 14-16. Attorney

---

[9] Paz's counsel informed the undersigned that Attorney Harr was in trial and unable to attend. Doc. No. 107, at 6.

Blanchfield further explained that he had contacted the manager at Salsas who stated that he had not heard from Valencia "for some period of time." *Id.*, at 16. Thus, from all appearances Defendants had abandoned the case and were not responding to their attorney.[10]

Following the discussions with counsel, the undersigned again refrained from issuing any sanctions, and instead rescheduled the in-person evidentiary hearing for a third time, to be held on January 17, 2024 at 10:00 a.m., and directed the parties to appear at 9:00 a.m. for one final attempt to meet and confer to resolve Paz's motion. Doc. No. 106. The undersigned stated that no remote testimony would be permitted, and if any witness or exhibit was not present at the hearing, that evidence would not be admitted. *Id.*, at 2. The undersigned further reminded the parties that "[i]f any party or witness requires an interpreter for all or part of the hearing, that party shall be responsible for ensuring that a certified interpreter is present for the hearing. The Court will not provide interpreter services." *Id.*, at 4. Finally, the undersigned advised the parties as follows:

---

[10] The undersigned also conducted part of the hearing *in camera* with Attorney Blanchfield, in order to protect any attorney-client privileged information and/or communications. Doc. No. 108 (sealed). During the *in camera* portion of the hearing, and without going into specifics, Attorney Blanchfield was again unable to shed any light on the issues raised during the public hearing portion and continued to resort to speculation. *Id.* At the conclusion of the *in camera* portion of the hearing, the undersigned advised Attorney Blanchfield directly that if his clients did not appear at the rescheduled evidentiary hearing, a recommendation of default against his clients would be forthcoming. *Id.*

Given the length of time this matter has been pending, and as discussed in detail with counsel today**, the January 17, 2024 hearing will not be continued absent a showing of truly exigent circumstances supported by affidavits and other admissible evidence.  If any party fails to appear at the hearing or otherwise fails to comply with this Order, the offending party may be subject to sanctions.   Specifically, if Plaintiff fails to appear, the undersigned will issue a report to the Presiding District Judge recommending that the case be dismissed without prejudice in its entirety for failure to prosecute.  If any Defendant fails to appear, the undersigned will issue a report to the Presiding District Judge recommending that default be entered against that Defendant.**

*Id.* (emphasis in original).[11]

Given Defendants' prior compliance failures, the undersigned issued an additional Order on January 9, 2024, reminding the parties of the deadlines and obligations as set forth in the December 8, 2023 Order, and stating that "[t]he Parties are urged to carefully review and comply with the Court's December 8, 2023 Order (Doc. No. 106)."  Doc. No. 109.

### 2.  *The January 17, 2024 Evidentiary Hearing*

But all of the undersigned's warnings were for naught.   On January 17, 2024 not only did Defendants fail to appear on time as required (they apparently arrived sometime between 9:15 a.m. and 9:35 a.m.), but Salsas' purported corporate representative (and apparent part-owner of Salsas) Crecencio Prado was not present.   They also failed to bring a certified interpreter as expressly required in

---

[11]  The undersigned also provided this warning orally to counsel for both sides prior to the conclusion of the December 8, 2023 hearing.   Doc. No. 107, at 20-21.

the December 8, 2023 Order.   As Attorney Blanchfield was well aware and had previously informed the undersigned (*see* Doc. No. 107, at 14–15), Valencia — a named party-Defendant and a person listed as a witness by both sides to provide testimony during the evidentiary hearing (*see* Doc. Nos. 111–12) — does not speak or read English.

Upon questioning by the undersigned as to why Defendants failed to comply with my December 8, 2023 Order, Attorney Blanchfield stated that Defendants did not intend to call Valencia as a witness, but then admitted that they had no answer as to how Valencia would be able to understand the proceedings, to include testimony and argument, other than suggesting that his wife, Blanca Valencia could simply interpret for him.   *See* Doc. No. 113.   Attorney Blanchfield further admitted that he and his clients had considered retaining an interpreter, but instead thought that Blanca Valencia – who was not named as a Defendant nor an attorney or certified interpreter – could simply speak on behalf of both Valencia and Salsas. Defendants and their counsel thought wrong.   *See, e.g.*, Local Rule 2.02(b)(2); 28 U.S.C. § 1654 ("[P]arties may plead and conduct their own cases personally or by counsel[.]").

In the absence of a certified interpreter — again in direct contravention of the undersigned's clear and unambiguous instructions — and particularly in light of Paz's counsel's explanation that Valencia would be called to testify and was a key

witness, the undersigned for a third time canceled the evidentiary hearing.   The undersigned then discussed with the parties permitting them to utilize the undersigned's courtroom to continue settlement discussions, which the parties wished to do.   The undersigned afforded the parties until noon for this purpose, instructed that the undersigned's law clerk would check in every 30–45 minutes, and informed the parties that if a settlement was reached, the undersigned would require the parties to immediately memorialize the agreement in writing and execute same.   At no point in time did the undersigned advise that the parties were free to leave.   And given the parties' subsequent inquiry as to whether the undersigned would return to the bench to complete the proceedings, it is clear that the parties were aware that they were *not* free to leave.   *See* Doc. No. 113.

The parties were unable to come to a settlement, but notified the undersigned's chambers that they were interested in consenting to the undersigned's jurisdiction.   However, when the undersigned returned to the courtroom, Defendants were nowhere to be found.   Attorney Blanchfield stated that they left apparently to attend an 11:30 a.m. medical appointment, and that they were under the impression that the evidentiary hearing would only last one hour. When the undersigned inquired where this incorrect assumption came from, counsel simply stated that he did not have the undersigned's December 8, 2023 Order in front of him.   At this point, with no Defendants present, the undersigned

had no choice but to conclude the proceedings.   And while it is probably obvious, the undersigned's Order nowhere limited the evidentiary hearing to one hour.   *See* Doc. No. 106.

       3.    *The Order to Show Cause*

Given what can only be described as a pattern of delay and violation of Court Orders, and as explained to the parties prior to the conclusion of the January 17, 2024 proceedings, the undersigned determined that any further attempts to reschedule the evidentiary hearing would be futile and not in the interests of justice. Instead, as also discussed with the parties, the undersigned issued that same day an Order to Show Cause to Defendants and Attorney Blanchfield.   Doc. No. 114. In addition to relaying the lengthy history of this case, the Order directed the parties to show cause in writing why the undersigned should not recommend to Judge Dalton, pursuant to Fed. R. Civ. P. 16(f)(1)(C) and the Court's inherent authority, that sanctions be levied, up to and including the striking of Defendants' pleadings and the entry of Clerk's default against both Defendants, and that this case should proceed to a motion for default judgment on all claims.   *Id.*, at 10.   The undersigned further directed Defendants and Attorney Blanchfield to show cause why the undersigned also should not sanction Defendants and their counsel, jointly and severally, for their failure to comply with the undersigned's December 8, 2023 Order, specifically by failing to retain a certified interpreter so that the January 17,

2024 hearing could proceed, with such sanctions taking the form of an award of Paz's fees and costs, including travel expenses and interpreter fees, incurred in preparing for and attending the January 17, 2024 hearing.   *Id.*

The deadline for the show cause responses was set for January 31, 2024.   *Id.* On January 30, 2024, Defendants filed a response, by and through Attorney Blanchfield.   Doc. No. 115.   In sum, Attorney Blanchfield represented that in the weeks prior to the January 17, 2024 hearing, he attempted to explain to Blanca Valencia the need to retain additional counsel, but does not believe she fully understood the issues, nor fully understood the need for an interpreter for the hearing.   *Id.*, at 1-2.   Attorney Blanchfield further represented that "[d]uring and following the hearing," he began to understand that Blanca Valencia may not have remembered the past 11 months of the litigation, nor understood the nature of the January 17, 2024 hearing, but instead wished to settle the case at the hearing.   *Id.*, at 2.   Attorney Blanchfield also claimed difficulties in communicating with Valencia, given that "all of undersigned communications with Ms. Valencia are then translated to Mr. Valencia and the third owner, Crecencio Prado," and that Attorney Blanchfield "is not confident" communications between and among Valencia, Blanca Valencia, and Crecencio Prado are "always clear and accurate," which may have resulted in Crecencio Prado's absence from the hearing.   *Id.*, at 2, 3.[12]

---

[12] Attorney Blanchfield further represented that he told Defendants in November

With respect to the December 8, 2023 hearing, Attorney Blanchfield merely stated that Valencia "was undergoing medical treatment" and admitted that he did not seek any further explanation for Defendants' absence from that hearing. *Id.*, at 4. And as to Defendants' early departure from the January 17, 2024 hearing, Attorney Blanchfield stated that Defendants were under the impression that the settlement discussions were optional and the parties were free to leave at any time. *Id.*, at 3. In conclusion, Attorney Blanchfield represented that Defendants attended the hearing in good faith and attempted to settle the case, that communications with his clients "may have not been completely understood," and that any errors were "wholly unintentional" and "inadvertent." *Id.*, at 4.

On January 31, 2024, Attorney Blanchfield filed a "supplemental response" on his own behalf. Doc. No. 117. The response in large part reiterated the communication issues between himself and his clients, Defendants' purported lack of understanding concerning these communications, and the intentions of Attorney Blanchfield to withdraw and of Defendants to retain new counsel. *Id.* Attorney Blanchfield also, however, for the first time explained that he learned on January

---

and December of his intent to withdraw as counsel, and that after the January 17, 2024 hearing, Defendants stated they would hire new counsel. Doc. No. 115, at 3. However, as of the date of this Report and Recommendation, no new counsel has appeared on behalf of any Defendant. And on February 8, 2024, the undersigned denied Attorney Blanchfield's motion to withdraw, noting that he may renew the motion upon appearance of substitute counsel. Doc. No. 120.

31, 2024 that Valencia and Blanca Valenica were in Spain from the end of November to mid-December 2023, that he attempted to reach Blanca Valencia via email about her husband's alleged "health issues," and that he received no response beyond an email that the Valencias could not attend the December 8, 2023 hearing as they were out of the country for "reasons you already know."  *Id.*, at 2-3.   And with respect to retaining a certified interpreter for the January 17, 2024 hearing, Attorney Blanchfield for the first time represented that he "did not receive any indication" that he "should pursue or retain" an interpreter.  *Id.*, at 3.[13]

In sum, these responses evidence a lack of effective communication between and among Defendants and Attorney Blanchfield.   But they also demonstrate a complete failure on both sides to rectify this known issue – in particular the undersigned is baffled as to why Defendants did not retain an interpreter, not just for the hearings as ordered, but also for regular communication with Attorney Blanchfield throughout the litigation of this case.   Moreover, these responses do not adequately explain the nearly year-long pattern of delays with respect to the settlement enforcement dispute, including the failure to respond to numerous motions, the failure to comply with numerous Court orders, and the conflicting

---

[13]  On January 30, 2024, Valencia submitted his own response to the Order to Show Cause, which the undersigned ordered stricken pursuant to Local Rules 2.02(b)(2) and (3). Doc. Nos. 116, 118.

representations and actions taken (or not taken) at hearings and in Court filings.[14]
And it bears noting that since these responses were filed, Defendants have not filed
anything else in this case.

With this lengthy recitation, the undersigned now turns to Paz's pending
motion.

## II.     ANALYSIS

### A.      *Plaintiff's Request to Enforce Settlement*

Paz first requests that the Court find that a valid and enforceable settlement
exists between the parties – as memorialized in Paz's attorney's February 16, 2023
email to Attorney Blanchfield – and that the settlement is fair and reasonable under
*Lynn's Food.*   Doc. No. 82; *see also* Doc. No. 82-1.

Under federal law, a district court has the inherent power to summarily
enforce settlement agreements entered into by parties in a pending case.   *Ford v.
Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991).   "In both
the federal and state courts, settlements are highly favored and will be enforced
whenever possible."   *Malvaes v. Constellation Brands, Inc.*, No. 14–21303–CIV–
COOKE/TORRES, 2016 WL 4007332, at *2 (S.D. Fla. June 23, 2016) (citing *Murchison*

---

[14] In particular, the undersigned notes that at the January 17, 2024 hearing,
Defendants and Attorney Blanchfield represented that an interpreter was not needed – a
representation directly contradicted by the later statements in their responses to the Order
to Show Cause.

*v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994); *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295, 297 (Fla. Dist. Ct. App. 2003)).

"In general, the law of contracts governs the construction and enforcement of settlement agreements."  *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (citation omitted).   And "[t]he construction and enforcement of settlement agreements are governed by the contract law of the forum state."  *Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008) (citing *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)).[15]   Thus, the determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract principles using a preponderance of the evidence standard.  *See Welch v. N. Am. Tank Line, Inc.*, No. 8:06-cv-2340-T-17MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) (citing, *inter alia*, *U.S. Fire Ins. v. Caulkins Indiantown Citrus Corp.*, 931 F.2d 744, 749 (11th Cir. 1991)).   This applies to FLSA claims.  *See, e.g., Whitney v. Doctors Spa at Duval Square, Inc.*, No. 4:23-CV-10014-GAYLES/TORRES, 2024 WL 2022633, at *1 (S.D. Fla. Apr. 17, 2024), *report and recommendation adopted*, 2024 WL 2019034 (S.D. Fla. May 7, 2024) (applying Florida law of contracts to determine whether a valid and enforceable FLSA settlement agreement existed); *Christopher v.*

---

[15] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."  *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

*Damiano Long, LLC*, No. 6:06-cv-438-Orl-22DAB, 2007 WL 1839288 (M.D. Fla. June 26, 2007) (same).

In determining whether an enforceable settlement agreement exists, the Court must resolve two questions: first, whether counsel has clear and unequivocal authority to enter into a binding settlement agreement on behalf of his client and, second, whether a binding agreement was reached. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994); *see also Vital Pharm., Inc. v. S.A.N. Nutrition Corp.*, No. 06–60646–CIV, 2007 WL 1655421, at *4 (S.D. Fla. June 6, 2007). The party seeking to compel enforcement of the settlement bears the burden of proving both requirements. *See Weitzman v. Bergman*, 555 So. 2d 448, 449–50 (Fla. Dist. Ct. App. 1990) ("[I]t is the burden of the party seeking to compel the settlement . . . to show that the attorney had authority to settle the case[.]"); *Carroll v. Carroll*, 532 So. 2d 1109, 1109 (Fla. Dist. Ct. App. 1988) (holding that the party seeking to enforce a settlement agreement bears the burden of showing that the opposing party assented to the terms of the agreement).

"[P]arties have broad discretion in fashioning the terms of a settlement agreement, and courts must enforce a settlement agreement so long as the parties agree on the essential terms and seriously understand and intend to be bound by the terms." *U.S. Bank Nat'l Ass'n v. Benoit*, 190 So. 3d 235, 237 (Fla. Dist. Ct. App. 2016) (alteration in original) (citations and quotation marks omitted). "To compel

enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *BP Prods. N. Am. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007) (citing *Don L. Tullis and Assoc., Inc. v. Benge*, 473 So. 2d 1384 (Fla. Dist. Ct. App. 1985)).   "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Lanza v. Damian Carpentry*, 6 So. 3d 674, 676 (Fla. Dist. Ct. App. 2009) (citation omitted).   Uncertainty as to non-essential elements or that the parties agree that they will enter into a more specific agreement later does not preclude finding that the parties reached a settlement. *Specialty Disease Mgmt. Servs., Inc. v. AIDS Healthcare Found.*, No. 3:01-cv-1353-J-32TEM, 2003 WL 25608009, at *3, *4 (M.D. Fla. Oct. 21, 2003).   Rather, the Court must determine whether there was a "meeting of the minds," and such a finding "must be supported by competent substantial evidence." *Id.*, at *4 (citing *Spiegel*, 834 So. 2d at 297).

The only evidence Paz points to in support of her contention that a valid and enforceable agreement exists is the February 16, 2023 email sent by her counsel to Attorney Blanchfield.   Doc. No. 82, at 8 ("Here the Settlement Email is clea[r] as to all the terms which constitute the essential terms of the agreement. . . .").   But upon review of this email, the other evidence submitted, and the record as a whole, the

undersigned cannot recommend that this email establishes a valid and enforceable settlement.

First, the undersigned finds that Paz has failed to establish Attorney Blanchfield ever possessed clear and unequivocal authority to enter into a binding settlement agreement on behalf of Defendants.[16]   Rather, the evidence supports a contrary conclusion.   The February 16, 2023 email is drafted by Julisse Jimenez, one of Paz's attorneys, and other than vague references to "as discussed" provides no indicia of when or how any purported agreement was reached.   Doc. No. 82-1. There does not appear to be any response to this email.   Instead, Paz submits a single email from Attorney Blanchfield to Attorney Jimenez dated the next day, February 17, 2023, that states, in its entirety, "Yesterday afternoon I received notice that my client had obtained new counsel.   I am trying to verify this, but have not been able to.   I will keep working on it."   Doc. No. 82-2.   At no point does Attorney Blanchfield even suggest that a settlement had been reached.   Paz also attaches a forwarded copy of the February 16, 2023 email to co-counsel Jason Harr, but again there does not appear to be any response to that email.   Doc. No. 82-3.

---

[16] The undersigned focuses on Attorney Blanchfield as the parties agree he was representing Defendants in February 2023, and he was the attorney with knowledge of the facts surrounding any purported settlement negotiations at that time.   However, the undersigned notes that throughout this litigation, the parties make conflicting representations as to whether Attorney Blanchfield or Attorney Harr represented Defendants in this case, and during which time periods.   This confusion only further supports a finding that no enforceable agreement exists.

Further, Paz submits an excerpt from Salsas' Rule 30(b)(6) deposition, in which Crecencio Prado, who (at least at that time) was presented as the corporate representative for Salsas, testified that the parties "did not come to any agreement," and that Defendants rescinded the offer.   Doc. No. 82-4, at 3-4.[17]   Mr. Prado further testified that he was unaware that Attorney Blanchfield had sent Paz any settlement offer, and that he did not know whether or not Valencia could have (or did) authorize a settlement offer.   *Id.*, at 6.

These facts – the only evidence in the record – fall short of demonstrating that Attorney Blanchfield had clear and unequivocal authority to bind Defendants to a settlement in February 2023.   Rather, the evidence at best shows silence on the part of Defendants in the face of the February 16, 2023 email, and at worst shows a breakdown in communication between Defendants and their counsel, culminating with the corporate representative affirmatively testifying at deposition that he was unaware of any settlement offers being made on Defendants' behalf.   *See, e.g.,* *Elizalde v. SOS Furniture Co., Inc.*, No. 6:13-cv-1777-Orl-37KRS, 2014 WL 12872679, at *3 (M.D. Fla. Aug. 11, 2014), *report and recommendation adopted*, 2014 WL 12872681 (M.D. Fla. Sept. 4, 2014) (finding the parties did not enter into an FLSA settlement where the settlement agreement was not executed by anyone on behalf of

---

[17] Pinpoint citations to the deposition transcript reflect the pagination provided by CM/ECF, rather than the internal pagination on the document.

defendants, and no affirmative or other evidence that the terms of the settlement were agreed to by both parties was presented; rather the only evidence – an affidavit by counsel – showed that defendants refused to go forward with the settlement while the parties were still drafting the agreement); *Downs v. United States*, No. 06-20861-CIV, 2008 WL 2726913, at *5-6 (S.D. Fla. July 10, 2008) (denying motion to enforce settlement where testimony demonstrated lack of actual authority to settle, and rejecting vague emails discussing settlement amounts as proof of authority); *Sharick v. Se. Univ. of Health Scis., Inc.*, 891 So. 2d 562, 565 (Fla. Dist. Ct. App. 2004) ("An attorney's belief that he or she has the authority to settle does not alone establish such authority.").[18]

Even if Paz were somehow able to establish that Attorney Blanchfield had clear and unequivocal authority to enter into a settlement in February 2023, Paz has failed to demonstrate the existence of a binding agreement.   Paz contends that the February 16, 2023 email contains all of the essential terms of their settlement agreement.   Doc. No. 82, at 8.   But a review of that email shows that several terms remain unclear and outstanding.   Paz brought claims for unpaid overtime

---

[18] The undersigned's findings are further buttressed by the numerous conflicting representations made by Attorney Blanchfield in various Court filings as to whether a settlement existed, as well as his conflicting and confusing representations at the December 8, 2023 and January 17, 2024 hearings with respect to his clients.   The responses to the Order to Show Cause also demonstrate a lack of consensus as to whether Attorney Blanchfield had authority to settle and/or whether Defendants agreed to any settlement. *See* Doc. No. at 115, at 2.

compensation and retaliation, and while the email provides a total dollar amount, it clearly states that "we can discuss apportionment to the retaliation claim."   Doc. No. 82-1.   The email is also silent with respect to any amount allocated to liquidated damages.   The email also expressly states that "settlement is contingent on agreement to the magistrate's jurisdiction."   *Id.*   And while the email states that payment would be "within 10 days from the execution of the Agreement," *id.*, as noted in Paz's motion, the question of a payment schedule remains very much in dispute.   *See* Doc. No. 82, at 5, 15.   Moreover, as noted above, Plaintiff submits no response from Defendants to this email or evidence of any indication that they agreed to offer the terms therein, and the only other evidence suggests that they did not.   *See* Doc. No. 82-4.

"If a purported agreement leaves open its essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract."   *Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) (citing *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MAP, 2009 WL 2473686, at *4 (M.D. Fla. Aug. 11, 2009); *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2007)).   Based on this record – development of which the undersigned recognizes was hampered by Defendants' conduct – the undersigned finds that several terms remained open for further discussion and/or were contingent on their face, and as

such the parties did not enter into a binding settlement agreement. *See also ABC Liquors, Inc.*, 967 So. 2d at 1056 ("Where essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract." (citation omitted)); *RSUI Indem. Co. v. Desai*, No. 8:13-cv-2629-T-30TGW, 2016 WL 7013534, at *6 (M.D. Fla. Nov. 8, 2016), *report and recommendation adopted*, 2016 WL 6947372 (M.D. Fla. Nov. 28, 2016) ("[W]hen parties agree to agree in the future, there is no enforceable contract until after negotiations are completed."); *Rolex Watch U.S.A., Inc. v. Bonney*, 546 F. Supp. 2d 1304, 1307-08 (M.D. Fla. 2008) (finding email from defendant's counsel purporting to confirm terms of the settlement, to which plaintiff's counsel never responded, was insufficient to establish a meeting of the minds and mutual agreement to all essential terms); *see also Calderon v. Springs Landscape & Maint., Inc.*, No. 17-22869-CIV, 2018 WL 5098976, at *1 (S.D. Fla. Aug. 9, 2018), *report and recommendation adopted,* 2018 WL 6444227 (S.D. Fla. Dec. 10, 2018) (enforcing unsigned FLSA settlement, noting that it contained all essential terms, to include the settlement amount, liquidated damages, execution of a mutual general release, and the time frame to make payments).[19]

---

[19] "[W]hat constitutes an essential term of a contract will vary widely according to the nature and complexity of each transaction and must be evaluated on a case specific basis." *ABC Liquors, Inc.*, 967 So. 2d at 1056. The undersigned finds that, in this case, the apportionment of the settlement amount between the unpaid overtime and retaliation claims – which may have tax consequences – as well as whether the parties have compromised Paz's claim to liquidated damages, are essential terms for an FLSA settlement, for which there was no meeting of the minds. These terms would also be

Last, the parties' conduct in this litigation since February 16, 2023 weighs against a finding of a binding settlement agreement.   While now arguing that a settlement had been reached in full on February 16, 2023, Paz continued to litigate the case, including moving for partial summary judgment and preparing for trial. *See* Doc. No. 82, at 3; *see also* Doc. No. 48 (motion for partial summary judgment filed on April 4, 2023).   In addition, Paz details in the present motion months of back-and-forth negotiations between the parties as to whether or not a settlement agreement existed, and whether the terms – including date of payment – had been established.   Doc. No. 82, at 3-5; *see also* Doc. Nos. 73, 78.   *See 6600 Suemac Place, LLC, v. Poma Glass and Speciality Windows, Inc.,* No. 3:16-cv-1417-J-39JBT, 2018 WL 11319833, at *7-9 (M.D. Fla. Mar. 5, 2018) (finding no enforceable settlement agreement where it was clear that the parties continued to negotiate for weeks, and the moving party waited more than two weeks after the suggested date of settlement to declare a binding settlement, further supporting that negotiation of material terms remained ongoing).

---

necessary in order for the Court to determine if the settlement was fair and reasonable under *Lynn's Food*.   *See, e.g., Elise v. 3D Living & Home Servs., Inc.,* No. 20-CV-60067, 2020 WL 4015488, at *2 (S.D. Fla. July 16, 2020) (denying motion to approve FLSA settlement where the agreement failed to apportion Plaintiff's award between unpaid wages and liquidated damages); *Delgado v. Gator Mulch of S.W. Fla., Inc.,* No. 2:17-cv-411-FtM-99MRM, 2018 WL 3827153, at *2 (M.D. Fla. July 26, 2018), *report and recommendation adopted*, 2018 WL 3817746 (M.D. Fla. Aug. 10, 2018) (same).

The undersigned endeavored to shed light on these issues by conducting an evidentiary hearing.   *See Murchison*, 13 F.3d at 1486 ("Summary enforcement of an alleged settlement is improper when there is a substantial factual dispute as to the terms of the settlement." (citation omitted)).   But, as described above, those efforts were thwarted at every turn by Defendants.   In other words, in the undersigned's opinion, Plaintiff's failure to meet her burden of establishing the existence of a valid and enforceable settlement rests in large part in the hands of Defendants.   For this reason and others discussed in this report, the undersigned cannot recommend granting the motion to enforce settlement, but will recommend the alternative relief of sanctions.

B.    *Plaintiff's Alternative Request for Sanctions*

In the alternative, Plaintiff requests as a sanction that the Court strike Defendants' pleadings and enter default.   Doc. No. 82, at 1, 14-15.   Federal Rule of Civil Procedure 16 authorizes a court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order."   Fed. R. Civ. P. 16(f)(1)(C).

Rule 16(f)(1) refers to the sanctions available under Federal Rule of Civil Procedure 37(b)(2)(A)(ii)-(vii), with such sanctions to include:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. Rule 37(b)(2)(A)(ii)-(vii).   Moreover, unless the failure to comply was substantially justified or other circumstances would make it unjust, "the court must order a party, its attorney, or both to pay reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16]."   Fed. R. Civ. P. 16(f)(2).   These fees may be in addition to the sanctions ordered under Rule 16(f)(1).   *Id.*

Thus, when a party fails to attend a case management conference or fails to obey a pretrial order, the Court is permitted to impose a number of sanctions under Rule 16(f), including striking a party's pleadings and entering clerk's default.   *See id.*   The Eleventh Circuit has stated that such a severe sanction is necessary "only if noncompliance is due to willful or bad faith disregard of court orders" and the court finds lesser sanctions would not suffice.   *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542-43 (11th Cir. 1985) (citations omitted); *see also Winn-Dixie Stores, Inc. v. Se. Milk, Inc.*, No. 3:15-cv-1143-J-39PDB, 2019 WL

13038734, at *2 (M.D. Fla. Nov. 1, 2019) ("Although Rule 16(f) affords broad discretion to a district court, sanctions are generally warranted only where there is a 'clear record of delay or willful contempt' or other improper conduct." (citation omitted)).

Applying these legal principles to the facts of this case, the undersigned respectfully recommends that sanctions, in the form of striking Defendants' pleadings and the entry of default, as well as monetary sanctions related to the January 17, 2024 hearing, are appropriate.   As noted above, Defendants have failed to comply with numerous Court orders resulting in extensive delays in resolving what, by all accounts, is a relatively straight forward FLSA dispute.   They failed to properly respond to several filings despite being directed to do so (*see* Doc. Nos. 73, 77, 83); they failed to appear at the December 8, 2023 evidentiary hearing without any good cause explanation (*see* Doc. Nos. 85, 92, 97, 101-05); and they failed to ensure that Salsas' corporate representative (Crecencio Prado) and a certified interpreter appeared at the January 17, 2024 hearing thereby preventing the hearing from going forward (*see* Doc. Nos. 106, 109, 113-14).   And throughout this time period, the undersigned repeatedly warned Defendants of the consequences of failing to comply, but Defendants continued with their pattern of non-compliance. *See* Doc. Nos. 85, 106-07, 109.

The undersigned further finds that, at this stage of the case, no lesser sanction other than default will suffice.[20]   Simply put, Defendants have engaged in a pattern of delay tactics and refusal to engage in settlement enforcement proceedings, and their explanations are woefully lacking.   Their responses to the undersigned's Order to Show Cause only contradict prior representations, fail to explain why prior Orders were ignored, and while they reference "good faith" or "unintentional" actions, the actual evidence before the Court leads to no other conclusion than Defendants' conduct was deliberate and intentional.   *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Avacion*, 88 F.3d 948, 952 (11th Cir. 1996) ("[W]hen a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful.").

Given the foregoing, there is no other lesser sanction other than default that would suffice to ensure Defendants' compliance going forward.   *See, e.g.,*

---

[20] The undersigned considered lesser sanctions, *see* Fed. R. Civ. P. 37(b)(2)(A), however discovery has been closed for some time and Paz does not argue that she was prevented from conducting any necessary discovery.   In addition, partial summary judgment in Paz's favor has been entered with several key elements of Paz's unpaid overtime claim established and Paz deemed the only party permitted to submit evidence as to damages.   Doc. No. 50.   Moreover, litigation in this case has been essentially stayed for nearly 10 months while the undersigned attempted to resolve the settlement enforcement issue, and any further stay would only penalize Paz.   Thus, the undersigned believes that striking Defendants' pleadings is the only available sanction at this time.   *See, e.g, Everything Divine Inc. v. O'Quinn*, No. 6:12-cv-1722-ORL-37, 2014 WL 3593691, at *2 (M.D. Fla. July 18, 2014) ("Given the imminence of trial, the Court finds that lesser sanctions would not suffice.").

*Samandarova v. Hookah Exotix LLC*, No. 22-22787-CIV, 2023 WL 346659, at \*2 (S.D. Fla. Jan. 20, 2023) (striking answer and entering default judgment under Rule 16(f) where defendant repeatedly failed to comply with court orders, despite receiving numerous extensions of time, explicit instructions on how to properly respond, and several warnings that sanctions would result from continued failures); *United States v. Hemmerle*, No. 6:18-cv-283-Orl-22GJK, 2018 WL 3029064, at \*2 (M.D. Fla. May 31, 2018), *report and recommendation adopted*, No. 6:18-cv-283-Orl-22GJK, 2018 WL 3020203 (M.D. Fla. June 18, 2018) (levying sanction of clerk's default where defendant willfully refused to comply with court orders); *Everything Divine Inc. v. O'Quinn*, No. 6:12-cv-1722-Orl-37DAB, 2014 WL 3593691, at \*1–2 (M.D. Fla. July 18, 2014) (striking, pursuant to Rule 16(f), defendant's answer and entering judgment against defendant and in favor of plaintiff, where defendant violated several court orders, including failing to participate in mediation, failing to submit a joint pretrial statement, and failing to appear at a scheduled pretrial conference; noting that "[d]efendant's complete and consistent absence from this case cannot be attributed to mere negligence, misunderstanding, or inability to comply.   Rather, Defendant's actions are deemed willful."); *Glanzrock v. Patriot Roofing Indus., Inc.*, No. 8:07-cv-535-T-33MAP, 2008 WL 3833950, at \*1–2 (M.D. Fla. Aug. 15, 2008), *judgment entered*, 2009 WL 179634 (M.D. Fla. Jan. 26, 2009) (finding sanction of default warranted in FLSA case where defendants willfully disregarded a scheduling order and a show

cause order which warned that sanctions would be imposed, noting defendants' pattern of noncompliance throughout this case, including an initial failure to answer the complaint resulting in clerk's default that was later set aside); *Pickett v. Exec. Preference Corp.*, No. 6:05–cv–1128–Orl–31DAB, 2006 WL 2947844, at *2 (M.D. Fla. Oct. 16, 2006) ("As it is plain that [the defendant] . . . has abandoned its defense and has failed to comply with a Court Order . . . [the Court will] strike its pleadings, and enter a default against it.   Absent any indication that [it] intends to participate in this case, no lesser sanction will suffice."); *see also Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, 412 F. App'x 230, 232 (11th Cir. 2011) (affirming entry of default judgment as a sanction where defendants "failed to provide an adequate accounting, failed to participate in the drafting of a joint final pretrial stipulation, and failed to attend the final pretrial conference"); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (affirming sanction of default judgment for party's violation of court orders).

The undersigned also respectfully recommends that monetary sanctions, in the form of Paz's expenses in preparing for and attending the January 17, 2024 evidentiary hearing, should be levied against Defendants and Attorney Blanchfield, jointly and severally.   In short, Defendants admittedly considered and ignored the undersigned's multiple Orders directing that all parties should appear and that they should provide a certified interpreter, and it is Defendants' actions alone that

prevented the January 17, 2024 hearing from going forward.  And despite being given an opportunity to address their actions, the only explanation provided is that Attorney Blanchfield "did not receive any indication" that he "should pursue or retain" a certified interpreter, and that "communication issues" precluded Crecencio Prado's appearance.   Doc. No. 117, at 3.   These statements both contradict Attorney Blanchfield's statements at the January 17, 2024 hearing and wholly fail to explain why the Court's orders were ignored.   As such, the undersigned finds that Defendants' failure to comply was not substantially justified, and therefore recommends that this additional monetary sanction be awarded.   *See* Fed. R. Civ. P. 16(f)(2) ("[T]he court must order a party, its attorney, or both to pay reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16]."); *Vaughn v. GEMCO2, LLC*, No. 6:17-cv-1713-Orl-41KRS, 2018 WL 6620600, at *4–7 (M.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, 2019 WL 1765051 (M.D. Fla. Apr. 22, 2019) (levying sanctions in the form of reasonable expenses and attorney's fees under both Rule 16(f) and Rule 37(a) against defendant's counsel for failure to comply with a discovery order and case management and scheduling order, including failure to attend mediation, and finding counsel's failures were not substantially justified); *Everything Divine Inc.*, 2014 WL 3593691, at *1–2 (striking defendant's answer,

entering default judgment, and awarding sanctions for defendant's failure to attend court-ordered mediation).

## III.   RECOMMENDATION

For these reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Court do the following:

1.     **GRANT IN PART** Plaintiff's Renewed Motion to Enforce Settlement Agreement/Motion to Approve Settlement Agreement and Motion for Additional Attorney Fees and Costs or in the Alternative Motion to Strike Defendants' Pleadings (Doc. No. 82);

2.     **DIRECT** the Clerk of Court to strike Defendants' answer (Doc. No. 9) and enter defaults against Defendants;

3.     **ORDER** Plaintiff to file a motion for default judgment within a time specified by the Court, with supporting evidence on the issues of damages, attorney's fees, and costs;

4.     **ORDER** that Plaintiff shall recover from Defendants and Attorney Blanchfield, jointly and severally, the reasonable expenses, including travel expenses and attorney's fees and costs, Plaintiff incurred in preparing for and attending the January 17, 2024 evidentiary hearing, and **PERMIT** counsel for Plaintiff to file a motion for assessment of such expenses after conferring with counsel for Defendants in a good faith attempt to resolve the issue; and

5.      **DENY** Plaintiff's Motion (Doc. No. 82) in all other respects.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 21, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy