# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EMMA PAZ,

           Plaintiff,

v.                                        Case No:   6:22-cv-834-RBD-LHP

SALSAS OF TITUSVILLE
CORPORATION and JESUS
VALENCIA,

           Defendants

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following

motions filed herein:

> **MOTION:   PLAINTIFF'S RENEWED MOTION FOR FINAL
> DEFAULT JUDGMENT AGAINST DEFENDANTS'
> SALSAS OF TITUSVILLE CORPORATION d/b/a
> SALSAS COCINA TITUSVILLE a/k/a SALSAS
> MEXICAN RESTAURANT, AND JESUS VALENCIA
> (Doc. No. 129)**
>
> **FILED:       September 30, 2024**
>
> _____
>
> **THEREON it is RECOMMENDED that the motion be GRANTED
> IN PART AND DENIED IN PART**.

> **MOTION:** **PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS AGAINST DEFENDANTS' SALSAS OF TITUSVILLE CORPORATION d/b/a SALSAS COCINA TITUSVILLE a/k/a SALSAS MEXICAN RESTAURANT, AND JESUS VALENCIA (Doc. No. 130)**
>
> **FILED:** **September 30, 2024**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    BACKGROUND

The history of this case has been set forth in prior orders and is adopted herein, with only salient facts revisited.  *See* Doc. Nos. 122-23.  On May 3, 2022, Plaintiff Emma Paz ("Paz") filed a complaint against Defendants Salsas of Titusville ("Salsas") and Jesus Valencia ("Valencia") alleging two claims for unpaid overtime compensation (Counts I-II), and one claim of retaliation (Count III), all in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  Doc. No. 1. Throughout this litigation, and as of the date of this report and recommendation, Defendants have been represented by Attorney Robert E. Blanchfield.[1]

_____

[1] On February 8, 2024, the undersigned denied Attorney Blanchfield's request to withdraw, stating that he may renew his request upon appearance of substitute counsel. Doc. No. 120; *see also* Doc. No. 119.   Attorney Blanchfield renewed his request on February 20, 2025, which the undersigned again denied for the same reasons.  Doc. Nos. 137-38. To date, no other counsel have appeared in this case on behalf of either Defendant.

Litigation continued, and on June 29, 2023, United States District Judge Roy B. Dalton, Jr. granted partial summary judgment in favor of Plaintiff, holding that it was established for trial that Paz was employed by Salsas, that she was covered by the FLSA, and that she worked more than 40 hours in at least one workweek. Doc. No. 50, at 3-4.    Judge Dalton further held, based on Salsas' corporate representative being unable to answer key questions during his deposition, that the only party who could introduce evidence concerning Paz's dates of employment, pay, or hours worked, was Paz herself. *Id.*  Trial was thereafter set to proceed with respect to the overtime claim against Salsas on the sole issue of whether Salsas paid Paz overtime for the weeks she worked over 40 hours. *Id.*  Trial would also proceed on all issues relating to the individual overtime claim against Valencia and the wrongful discharge/retaliation claim against Salsas. *Id.*

Beginning on August 15, 2023 through January 17, 2024, the parties engaged in extensive litigation – to include two failed evidentiary hearings before the undersigned – concerning enforcement of a purported settlement between the parties. *See* Doc. Nos. 58, 63, 65, 70, 71, 73, 75-83, 85, 92–93, 97, 101-07, 109, 113. The evidentiary hearings were unable to proceed solely due to the conduct of Defendants and Attorney Blanchfield. *See* Doc. Nos. 107, 113, 122.    The undersigned ultimately issued an Order directing Defendants to show cause in writing why the undersigned should not recommend to Judge Dalton, pursuant to

Fed. R. Civ. P. 16(f)(1)(C) and the Court's inherent authority, that sanctions be levied, up to and including the striking of Defendants' pleadings and the entry of Clerk's default against both Defendants, and that this case should proceed to a motion for default judgment on all claims.   Doc. No. 114, at 10.   The undersigned further directed Defendants and Attorney Blanchfield to show cause why they should not be sanctioned, jointly and severally, for their failure to comply with the undersigned's prior orders related to a January 17, 2024 evidentiary hearing, with such sanctions taking the form of an award of Paz's fees and costs, including travel expenses and interpreter fees, incurred in preparing for and attending the January 17, 2024 hearing.   *Id.*

Following review of the responses from Defendants and Attorney Blanchfield, *see* Doc. Nos. 115, 117, and upon review of the entire record in this case, the undersigned issued a report and recommendation to Judge Dalton recommending that there was no enforceable settlement between the parties, but that sanctions against Defendants and Attorney Blanchfield were warranted.   Doc. No. 122.   No party filed any objections, and on June 10, 2024, Judge Dalton adopted the undersigned's report and recommendation and issued sanctions to Defendants in the form of striking Defendants' answer (Doc. No. 9) and directing the Clerk to enter defaults against both Defendants as to all claims.   Doc. No. 123.   Judge Dalton also awarded to Paz her reasonable expenses, to include travel expenses and

attorneys' fees and costs, incurred in preparing for and attending the January 17, 2024 evidentiary hearing, with such fees and costs to be paid jointly and severally by Defendants and Attorney Blanchfield. *Id.* Clerk's default was entered accordingly on June 12, 2024. Doc. No. 124.

On July 9, 2024, Paz filed her first motion for default judgment, which the undersigned denied without prejudice for failure to provide sufficient detail and legal authority in support of her damages calculations, and for failure to provide sufficient evidence to support her claims for attorneys' fees and costs. Doc. Nos. 125-26. The undersigned directed Paz to file within thirty (30) days a renewed motion for default judgment addressing the identified deficiencies, and also directed Paz to file within this same deadline a motion to determine the reasonable expenses to be awarded jointly and severally against Defendants and Attorney Blanchfield for the January 17, 2024 hearing. Doc. No. 126.

On September 30, 2024, Paz filed her renewed motion for default judgment, in which she requested a total of $105,477.78 in damages, broken down as follows: $18,814.30 in unpaid overtime wages; an additional $18,814.30 in liquidated damages; $36,662.88 in unpaid regular and overtime wages for 16 weeks following her termination as compensation for her FLSA retaliation claim; $28,107.50 in attorneys' fees and $3,078.80 in costs. Doc. No. 129. On that same date, Paz also filed her motion seeking $3,884.11 in attorneys' fees and costs related to the January

17, 2024 evidentiary hearing.   Doc. No. 130.   Defendants requested, and received, an extension of time to respond to both motions, *see* Doc. Nos. 131-32, but Defendants never responded to either motion, therefore the motions are treated as unopposed.   *See* Local Rule 3.01(c).

Both motions were referred to the undersigned and are fully briefed. However, upon consideration of Plaintiff's filings, the undersigned again found numerous deficiencies, mathematical discrepancies, and inconsistencies with regard to her damages calculations – several of which the undersigned had previously identified (*see* Doc. No. 126).   Doc. No. 133.   The undersigned provided Plaintiff one final opportunity to establish her requested damages, and directed Plaintiff to provide supplemental briefing regarding the methodology and calculation of her damages, along with evidence in support.   *Id.*   The undersigned also scheduled an in-person evidentiary hearing.   *Id.*

Plaintiff timely-filed her supplemental brief, in which she now seeks unpaid overtime compensation of $18,814.30, an equal amount in liquidated damages, $8,800.00 in lost wages for her retaliation claim plus an equal amount in liquidated damages, $28,054.25 in attorneys' fees, and $2,287.50 in costs.   Doc. No. 134.   The requested fees and costs as a sanction for Defendants' conduct at the January 17, 2024 hearing remain unchanged.   Doc. No. 130.

The evidentiary hearing also went forward on February 26, 2025, at which Plaintiff testified via an interpreter.    Doc. Nos. 134, 140, 142.[2]    Plaintiff also submitted into evidence some of her timecards and payroll receipts.    Doc. Nos. 141-1, 141-2.    Attorney Blanchfield appeared on behalf of Defendants (neither of whom appeared), however he did not present any witnesses or evidence, did not cross-examine Plaintiff, and did not object to the admission of any exhibits.    Doc. Nos. 140, 142.[3]

With all evidence and argument now submitted, and for the reasons discussed below, the undersigned will respectfully recommend that the renewed motion for default judgment (Doc. No. 129) be granted in part and denied in part and that the motion for attorneys' fees and costs (Doc. No. 130) be granted.

## II.    THE RENEWED MOTION FOR DEFAULT JUDGMENT

### A.    Legal Standard

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry.    *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

---

[2] The transcript of the evidentiary hearing is at Doc. No. 142, and will be cited throughout as "Tr., #."

[3] The only statements Attorney Blanchfield made during the hearing were in an apparent attempt to relitigate the issues regarding the levy of sanctions – in particular the failure to obtain an interpreter for prior hearings – and an attempt to relitigate his requests to withdraw as counsel.    Tr., 49-50.

1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[4]   Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to" a default judgment.   *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   This analysis applies equally to motions for default judgment.   *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted).

If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment.   *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pleaded allegations of fact, allegations relating to the amount of

---

[4] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.   *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages to be awarded. *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors*, 777 F.2d at 1543–44. However, no hearing is needed "when the district court already has a wealth of evidence . . . such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

B.      *Allegations of the Complaint*[5]

Defendant Salsas is a Mexican restaurant located in Brevard County, Florida. Doc. No. 1, ¶¶ 4, 9. Valencia is the Owner and/or Officer and/or President of

---

[5] The Complaint is styled as a collective action, however the Court denied Paz's motion to certify a class on June 26, 2023. Doc. No. 49.

Salsas and resides in St. Johns County, Florida.  *Id.*, ¶¶ 4, 25.  Valencia had

operational control over Salsas, was involved in the day-to-day functions of the

restaurant, was in control of Salsas' financial affairs, and caused Salsas to

compensate, or not compensate, its employees.  *Id.*, ¶¶ 25-26.

At all relevant times, Salsas was an enterprise engaged in interstate

commerce, in that it sells and/or markets its services and/or goods to customers

throughout the United States, provides its services for goods sold and transported

from across state lines of other states, obtains and solicits funds from non-Florida

sources, accepts funds from non-Florida sources, uses telephonic transmissions

going over state lines to do its business, transmits funds outside Florida, and

otherwise regularly engaged in interstate commerce.  *Id.*, ¶¶ 7, 9.  The annual

gross revenue of Salsas at all relevant times was in excess of $500,000.00.  *Id.*, ¶ 8.

Paz was employed by Salsas and Valencia as a server from May 30, 2020

through June 2021 (the "First Period"), and from December 2021 through March 26,

2022 (the "Second Period").  *Id.*, ¶¶ 11, 15.  Valencia provided Paz her work

schedule, and throughout her employment, Paz routinely worked more than 40

hours per week.  *Id.*, ¶¶ 12-13, 25.  Specifically, during the First Period, Paz

worked approximately 70 hours per week, and during the Second Period, Paz

worked approximately 50 hours per week.  *Id.*, ¶¶ 12-13.  Paz was compensated

at a minimum wage rate plus tips, however, Defendants failed to pay Paz overtime

wages for any hours worked over 40 in each week of her employment.   *Id.*, ¶¶ 10, 12-14, 17, 19.   Paz alleges that this failure to pay overtime was done knowingly, willfully, and intentionally.   *Id.*, ¶¶ 21-22, 27.

On or about March 26, 2022, Paz complained to Defendants about her unpaid overtime wages, and in response Salsas terminated her employment that same day. *Id.*, ¶ 32.   Defendants did not pay her any overtime, and Paz alleges that Salsas would not have fired her but for her complaint about unpaid overtime wages.   *Id.*, ¶ 34.

Paz asserts two unpaid overtime wage claims against Salsas (Count I) and Valencia (Count II) and seeks relief in the form of her unpaid overtime wages, liquidated damages in an amount equal to her unpaid overtime wages, attorneys' fees, and costs.   Doc. No. 1, ¶¶ 22-23, 27-28.   Paz also asserts a claim for retaliatory discharge against Salsas alone (Count III) and seeks relief in the form of back wages, plus an equal amount of liquidated damages, attorneys' fees and costs, reinstatement, and injunctive relief.   *Id.*, ¶ 35-36.   However, in the renewed motion for default judgment, Paz abandoned any claim for injunctive or equitable relief.   Doc. No. 129.[6]

---

[6] The renewed motion did not make clear whether Paz was still seeking liquidated damages for her retaliation claim.   *See* Doc. No. 129, at 9, 11-12.   Upon questioning from the undersigned, *see* Doc. No. 133, at 6-7, Paz has clarified that she is seeking liquidated damages for this claim.   Doc. No. 134, at 9.

C.    *Liability on the FLSA Overtime Claims (Counts I and II)*

"The FLSA requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. §§ 206(a), 207(a)).    "A plaintiff claiming unpaid wages under the FLSA must demonstrate the following: (1) the defendant employed the plaintiff; (2) the plaintiff engaged in interstate commerce or that the defendant is an enterprise engaged in interstate commerce; and (3) the defendant failed to pay the plaintiff a minimum wage or overtime compensation." *Thompson v. Healthy Home Env't, LLC*, No. 8:15-cv-2905-T-27JSS, 2016 WL 4472991, at *2 (M.D. Fla. July 27, 2016)), *report and recommendation adopted*, 2016 WL 4473162 (M.D. Fla. Aug. 23, 2016) (citing *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).

Paz's complaint sufficiently alleges all three requirements.   With respect to the employment requirement, Plaintiff alleges that she was employed by Salsas and Valencia as a server at their restaurant from May 30, 2020 through June 2021 and again from December 2021 through March 26, 2022.   Doc. No. 1, ¶¶ 11, 15.   *See also* 29 U.S.C. § 203(d), (e).    Paz further alleges that Valencia is the owner/officer/president of Salsas, had operational control of Salsas as well as control over Salsas' financial affairs, was involved in Salsas' day-to-day operations, determined whether an employee was compensated, and was responsible for

setting Paz's work schedule.  *Id.*, ¶¶ 25-26.  *See also* 29 U.S.C. § 203(d); *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. . . . To be personally liable, [the defendant] must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.").  These allegations are sufficient to establish that she was employed by both Defendants, particularly given the lack of any response or objection from Defendants.  *See also* Doc. No. 50 (granting partial summary judgment and establishing that Paz was employed by Salsas).

Paz's complaint also sufficiently establishes that the Defendants are covered by the FLSA.  In order to be eligible for unpaid minimum wage or overtime under the FLSA, an employee must demonstrate that he or she is covered by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). An employee may establish coverage by demonstrating: (1) that he or she was engaged in commerce or in the production of goods for commerce (*i.e.*, individual coverage); or (2) that the employer was engaged in commerce or in the production of goods for commerce (*i.e.*, enterprise coverage).  29 U.S.C. § 207(a)(1); *Josendis*, 662 F.3d at 1298-99.

For an employee to demonstrate that he or she was "engaged in commerce" for purposes of individual coverage, he or she must:

> be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. §§ 776.23(d)(2), 776.24).

To demonstrate enterprise coverage, the employee must show that:

> (1) the employer has two or more employees regularly and recurrently engaged in commerce, or has two or more employees regularly and recurrently 'handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (2) the employer's annual gross volume of sales is $500,000 or more.

*De Lotta*, 2009 WL 4349806, at *2 (citations omitted); *see* 29 U.S.C. § 203(s)(1). "District courts cannot presume for enterprise coverage either that the employer was involved in interstate commerce or that the employer grosses over $500,000 annually." *Id.* (citing *Sandoval v. Fla. Paradise Lawn Maint., Inc.*, 303 F. App'x 802, 805 (11th Cir. 2008) ("[I]t is clear from the language of the statute that, for enterprise coverage under the FLSA to apply, the enterprise must be engaged in commerce under the statute and must gross over $500,000 annually.")).

Paz alleges in her Complaint that Salsas was an enterprise engaged in interstate commerce, in that it sells and/or markets its services and/or goods to customers throughout the United States, provides its services for goods sold and transported from across state lines of other states, obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do its business, transmits funds outside Florida, and otherwise regularly engaged in interstate commerce. *Id.*, ¶¶ 7, 9. The annual gross revenue of Salsas at all relevant times was in excess of $500,000.00. *Id.*, ¶ 8.

Accepting Paz's allegations as true, and absent any objection from Defendants, the undersigned finds Paz has sufficiently alleged enterprise coverage under the FLSA. *See, e.g., Perez v. Margaritas V&P, Inc.*, No. 6:22-cv-1133-RBD-EJK, 2023 WL 2696182, at *3 (M.D. Fla. Mar. 14, 2023), *report and recommendation adopted*, 2023 WL 2691680 (M.D. Fla. Mar. 29, 2023) (finding enterprise coverage sufficiently pleaded on motion for default judgment where complaint alleged the company had "annual gross revenue that totaled $500,000 or more and was engaged in interstate commerce within the meaning of the FLSA, since 'it has employees handling, selling, or otherwise working on goods or materials including food, drinks, and supplies, that have been moved in or produced for commerce, as well as handling credit card transactions and accepting orders online and over the phone.'");

*Hollingsworth v. Hemani Holdings LLC*, No. 6:19-cv-199-Orl-22LRH, 2019 WL 11499493, at *5 (M.D. Fla. Oct. 29, 2019), *report and recommendation adopted*, 2019 WL 11499489 (M.D. Fla. Nov. 13, 2019) (allegations that "Defendant has more than two employees recurrently engaged in commerce or in the production of goods for commerce by regularly and recurrently using the instrumentalities of interstate commerce to accept and solicit funds from non-Florida sources; by using electronic devices to authorize credit card transactions" sufficient to support entry of default judgment); *Vignoli v. Clifton Apartments, Inc.*, 930 F. Supp. 2d 1342, 1346 (S.D. Fla. 2013) (finding allegations of enterprise coverage sufficient where plaintiffs alleged that "Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use internet and telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise engage in interstate commerce, particularly with respect to their employees." (alterations omitted)).   *See also* Doc. No. 50 (finding Paz covered by the FLSA).

As to the third requirement, Paz's complaint alleges that Defendants failed to compensate Plaintiff for overtime hours worked.   *E.g.*, Doc. No. 1, ¶¶ 14, 16-17, 20-22, 27.   Thus, the third requirement is also satisfied.

Having found that Paz has sufficiently alleged all three elements, the undersigned will recommend that the Court find Paz's allegations establish Defendants' liability for unpaid overtime compensation under the FLSA.

D.    *Liability on the FLSA Retaliation Claim (Count III)*

Paz also brings a retaliation claim against Salsas alone for retaliatory discharge.  "The FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations, and applies even if the employee cannot show 'individual coverage' or 'enterprise coverage.'"  *Johnson v. Faraj*, No. 3:17-cv-528-MCR-GRJ, 2019 WL 1025151, at *7 (N.D. Fla. Jan. 16, 2019), *report and recommendation adopted*, 2019 WL 1025147 (N.D. Fla. Mar. 4, 2019) (citing *Wirtz v. Ross Packaging Co.*, 367 F.2d 549, 550-51 (5th Cir. 1966); *accord Osorio v. G Sec. Servs. LLC*, No. 6:17-cv-2138-Orl-28GJK, 2018 WL 3130673, at *2 (M.D. Fla. June 11, 2018), *report and recommendation adopted*, 2018 WL 3130643 (M.D. Fla. June 26, 2018); *Thomas v. Jensen Telecom, Inc.*, No. 6:09-cv-2018-Orl-28KRS, 2010 WL 11626758, at *3–4 (M.D. Fla. Dec. 1, 2010), *report and recommendation adopted*, 2011 WL 13298577 (M.D. Fla. Jan. 10, 2011).

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter. . . ."  29 U.S.C. § 215(a)(3).  A plaintiff establishes a prima

facie case of FLSA retaliation by establishing three elements: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000) (alteration in original, citation omitted).

Paz alleges in Count III of her Complaint that on March 26, 2022 she complained to Salsas about her unpaid overtime wages, and that in response, Salsas terminated her employment that same day. Doc. No. 1, ¶ 32. Paz further alleges that she would not have been fired but for her complaint about unpaid overtime wages. *Id.*, ¶ 34.

Salsas has admitted these allegations by virtue of its default. *See Nishimatsu*, 515 F.2d at 1206. And upon consideration, the undersigned finds that default judgment on the FLSA retaliation claim is proper, given that Paz engaged in protected activity (complaints about failure to pay overtime), and Salsas, in close temporal proximity, terminated Paz's employment therefor. *See, e.g.*, *Payne v. Sec. & Crime Prevention Serv., Inc.*, No. 12-22032, 2013 WL 5446466, at *4 (S.D. Fla. Sept. 30, 2013) (finding default judgment on FLSA retaliation claim proper where the plaintiff made oral complaints to the defendants regarding unpaid wages and, as a result, was immediately taken off the work schedule without a legitimate reason and no longer allowed to work); *Thomas*, 2010 WL 11626758, at *4–5, *report and*

*recommendation adopted*, 2011 WL 13298577 (M.D. Fla. Jan. 10, 2011) (default judgment on FLSA retaliation claim granted where the plaintiff engaged in protected activity by complaining about failure to pay overtime, and the plaintiff was terminated as a result of the protected activity).   The undersigned will therefore recommend that the Court find liability established in Paz's favor on the retaliation claim.

> E.    *Damages*

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations related to damages are not deemed admitted and the Court must determine the amount and character of damages to be awarded."   *Glanzrock v. Patriot Roofing Indus., Inc.*, No. 8:07-cv-535-T-33MAP, 2009 WL 179634, at *2 (M.D. Fla. Jan. 26, 2009) (citing *Miller*, 75 F. Supp. 2d at 1346).   "[D]amages may be awarded to a non-defaulting party as part of the default judgment only where 'the record adequately reflects the basis for the award.'"   *United States ex rel. Chabot v. D&G Disc. Homes, LLC*, No. 6:06-cv-1536-Orl-35KRS, 2011 WL 13202177, at *2 (M.D. Fla. June 16, 2011) (quoting *Adolph Coors*, 777 F.2d at 1544).

While Paz sufficiently established via her written filings both Defendants' liability on all claims, she has struggled to quantify her damages.   As the undersigned noted on two separate occasions, her filings as to damages were at times inconsistent, contained mathematical errors, and often legally unsupported

and/or insufficiently explained.  *See* Doc. Nos. 126, 133.  Thus, the undersigned held an evidentiary hearing in an attempt to properly quantify damages.  *See* Doc. Nos. 140-42.  Based on Paz's testimony, submitted evidence, and supplemental briefing, the undersigned is now able to ascertain the hourly rates of pay for Paz's claims.  However, Paz's testimony at the February 26, 2025 evidentiary hearing was inconsistent and at times contradictory as to the number of hours she worked, leaving the undersigned with only estimates.

This lack of precision is not fatal, however.  For where, as here, an employer's records are inadequate and the employee sets forth evidence of the work performed to support a claim for unpaid wages, "the burden shifts to the employer to prove its claim or disprove the employee's, and upon failing to do so, the court can award damages to the employee even if the result is only approximate." *Etienne v. Inter-Cty. Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (where an employer fails to provide time records, a plaintiff can carry her burden by producing evidence to show the amount and extent of her compensable work as a matter of just and reasonable inference).  Thus, the undersigned has based Paz's damages calculations on her approximation of her hours worked, which the undersigned finds permissible under applicable legal authority.

### 1.    Unpaid Overtime Compensation

Pursuant to the FLSA, an employer who violates the minimum wage or overtime provisions shall be liable to the employee affected in the amount of the employee's unpaid minimum wages and unpaid overtime compensation, and an additional equal amount as liquidated damages.    29 U.S.C. § 216(b).    By virtue of their default, failure to respond to Paz's motions, and failure to present any evidence at the February 26, 2025 hearing, Defendants have not established any good faith failure to pay Paz overtime wages.    Paz has presented evidence to establish her unpaid overtime compensation as follows.

### a.    Hourly Rate

Paz established via her declaration[7] and hearing testimony that she worked for Defendants during two separate time periods:    the First Period from approximately May 30, 2020 through June 30, 2021, and the Second Period from December 1, 2021 through March 26, 2022.    Doc. No. 129-1, ¶¶ 6, 12; Tr., 6, 10.    For the First Period, Paz was paid an hourly rate of pay between $5.54/hour and $5.63/hour, and her hourly rate of pay during the Second Period was $6.98/hour. *See* Doc. No. 1, ¶¶ 12-13; Doc. No. 17, at 2; Doc. No. 129, at 6-7; Tr., 27-28; *see also* Doc. No. 141-2.    Paz further testified that she did not receive any overtime pay, but

---

[7] While titled as an affidavit, it is not notarized and is instead a declaration made in compliance with 28 U.S.C. § 1746.    Doc. No. 129-1.

that she also received tips in the approximate amount of $1,650.00/week.    Doc. No.

129-1, ¶¶ 5-6, 9; Tr., 7, 13, 24-25.

The FLSA provides separate procedures for calculating overtime rates for

tipped employees.    *See* 29 U.S.C. § 203(t) (defining a "tipped employee" as an

employe engaged in an occupation in which she "customarily and regularly

receives more than $30 a month in tips.").    Because tipped employees are permitted

to be paid an hourly wage less than the applicable minimum wage (based on a set

amount known as the "tip credit"), provided that the tips received equate to or

exceed the minimum wage, overtime wages are calculated on the full applicable

minimum wage, not the lower direct or cash wage payment, and tips are not

included.    *See Virgin v. Escalante-Black Diamond Golf Club, LLC*, No. 5:13-cv-359-Oc-

10PRL, 2014 WL 12591472, at *2 (M.D. Fla. Aug. 4, 2014); 29 C.F.R. § 531.60; United

States Department of Labor, Wage and Hour Division, Fact Sheet # 15: Tipped

Employees Under the Fair Labor Standards Act.    And where state law provides a

higher minimum wage than the FLSA, the higher hourly rate that is "most

protective" to employees must be used.    *See* 29 C.F.R. § 778.5 ("Where a higher

minimum wage than that set in the Fair Labor Standards Act is applicable to an

employee by virtue of such other legislation, the regular rate of the employee, as the

term is used in the Fair Labor Standards Act, cannot be lower than such applicable

minimum, for the words 'regular rate at which he is employed' as used in section 7

must be construed to mean the regular rate at which he is lawfully employed.");

*Vazquez v. Uooligan Gas Station Convenience Store Inc*, No. 2:18-cv-611-FtM-38NPM,

2020 WL 3211151, at *1, n.3 (M.D. Fla. May 22, 2020), *report and recommendation

adopted*, 2020 WL 3207263 (M.D. Fla. June 15, 2020); *see also* United States

Department of Labor, Wage and Hour Division, Fact Sheet # 15: Tipped Employees

Under the Fair Labor Standards Act.

Paz has calculated her applicable hourly rates for her overtime claims as

follows:

First Period of Employment (May 30, 2020 – June 30, 2021):

- May 30, 2020 – December 31, 2020:   $8.56 (applicable minimum wage)[8]

  x 1.5 (overtime rate) - $3.02 (tip credit)[9] = $9.82/hour.

- January 1, 2021 – June 30, 2021:   $8.65 (applicable minimum wage)[10] x

  1.5 (overtime rate) - $3.02 (tip credit) = $9.96.

---

[8]   The minimum wage in Florida in 2020 was $8.56/hour.   *See* https://www.dol.gov/agencies/whd/state/minimum-wage/tipped/2020.   The Florida minimum wage is appropriate to use here as it is higher than the federal minimum wage of $7.25.

[9]   The maximum tip credit that an employer can currently claim is $5.12/hour, *see* 29 C.F.R. § 516.28(a)(3), however Paz is only utilizing a $3.02/hour tip credit, which Paz contends is the maximum permissible under Florida law.  Tr., 30-32.  In the absence of any argument or evidence to the contrary, the undersigned will also use this lower amount. *See Groeschel v. Casey Key Fish House, Inc.*, No. 8:18-cv-2500-T-33AAS, 2019 WL 1093450, at *3 (M.D. Fla. Feb. 27, 2019) (at the default judgment damages stage, noting higher tip credit and also applying lower $3.02 amount upon request of plaintiff).

[10]   On January 1, 2021, the minimum wage in Florida increased to $8.65/hour, and it   increased   again   to   $10.00/hour   on   September   30,   2021.     *See*

<u>Second Period of Employment (December 1, 2021 – March 26, 2022)</u>:

- $10.00 (applicable minimum wage) x. 1.5 (overtime rate) - $3.02 (tip credit) = $11.98.

*See* Doc. No. 129-1, ¶ 12.

In the absence of any argument or evidence to the contrary, the undersigned will recommend that the Court utilize these hourly rates to calculate Paz's overtime damages. *See, e.g., Sanchez v. Grundy Pizza, Inc.*, No. 6:16-cv-596-Orl-31GJK, 2017 WL 693348, at *5 (M.D. Fla. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 680066 (M.D. Fla. Feb. 21, 2017) (calculating overtime wage for tipped employee in similar manner).

> b.    *Overtime Hours*

Paz represented in her prior filings that she worked approximately 70 hours per week during the First Period and 50 hours per week during the Second Period. *See* Doc. No. 1, ¶¶ 12-13; Doc. No. 17, at 2-3; Doc. No. 129, at 5-6; Doc. No. 129-1, ¶ 12; Doc. No. 134, at 6-7.   However, during the evidentiary hearing Paz's testimony wavered; at various points she testified that during the First Period she worked on average "60 or 70 hours," "between 50 and 60" hours, "70 hours" at least one pay period, and "between 60 and 70 hours, sometimes 50."  Tr., 11, 23.   In sum, she

_____

https://www.dol.gov/agencies/whd/state/minimum-wage/tipped/2021.

testified that during the First Period she worked "anywhere from 50 to 60 to 70 hours per week." Tr., 23-24. And during the Second Period, Paz testified that she worked on average "50 to 60 hours," "between 50 hours per week," "50 hours," and that during her last week of employment she either worked less than 50 hours, or "more than 55, 50." Tr., 13, 21, 23, 26. The exhibits Paz admitted into evidence were unhelpful, as Paz testified that they did not reflect the total number of hours she worked each week. Doc. Nos. 141-1, 141-2; Tr., 16-23.

As previously noted, however, this lack of precision does not preclude an award of damages; an approximation is sufficient. And upon review of all of the evidence, as well as Defendants' default and failure to provide any argument or evidence to refute any damages despite being given multiple opportunities to do so, the undersigned will recommend that the Court calculate Paz's overtime damages using 60 hours per week for the First Period, and 50 hours per week for the Second Period. *See Anfinson v. True Blue of Pinellas, Inc.*, No. 8:17-cv-210-T-17JSS, 2018 WL 4403277, at *2 (M.D. Fla. Aug. 29, 2018), *report and recommendation adopted*, 2018 WL 4385125 (M.D. Fla. Sept. 14, 2018) (awarding damages in FLSA claim despite inconsistencies in plaintiff's testimony as to hours worked, where employer did not provide any time records or other evidence in dispute); *Coleman v. Expert Care Nursing Registry, Inc.*, No. 18-80827-CV, 2019 WL 13261029, at *2 (S.D. Fla. Jan. 23, 2019) ("If the employer cannot successfully counter the plaintiff's

evidence, the court may award damages based on the plaintiff's approximations. In the case of a default, the employer has, by definition, failed to meet its burden. Thus, an award based on estimates is appropriate."); *Edenfield v. Crib 4 Life, Inc.*, No. 6:13-cv-319-Orl-36KRS, 2014 WL 1345389, at *4 (M.D. Fla. Apr. 4, 2014) ("Because [defendant] has not disproved [plaintiff's] evidence of the hours he worked, his approximation of the overtime hours worked is sufficient to establish the number of hours of overtime he worked.").

But this was not the only inconsistency.   At various points in this case, Paz represented that she received an hourly wage for *all* hours worked, while at other times she represented that she was only compensated for 40 hours of work each week, thus receiving zero wages for any hours in excess of 40.   *Compare* Doc. No. 1, ¶¶ 12-13; Doc. No. 17, at 2, *and* Doc. No. 129, at 6-7 (each stating that she received hourly wages for every hour worked), *with* Doc. No. 129, at 8, *and* Doc. No. 129-1, ¶ 12 (stating Paz was only paid for every hour worked up to 40 hours a week and calculating overtime damages as if Paz received no compensation at all for any hours exceeding 40).   The undersigned pointed out these conflicting representations, *see* Doc. No. 133, at 4-5, and in her supplemental briefing and hearing testimony Paz clarified that during her entire time of employment with Defendants she was never paid any wages (overtime or otherwise) for any hours worked in excess of 40 in any given week.   Doc. No. 134, at 6; Tr., 24; *see also* Doc.

No. 141-2 (payroll records showing Paz was never paid more than 80 hours in any
two-week period).

With these clarifications, and in the absence of any argument or evidence to
the contrary, the undersigned will therefore recommend that Paz receive overtime
compensation calculated as follows:

First Period of Employment (May 30, 2020 – June 30, 2021):

- May 30, 2020 – December 31, 2020:   $9.82/hour (overtime rate) x 20
  (overtime hours per week) x 31 weeks = $6,088.40

- January 1, 2021 – June 30, 2021:   $9.96/hour (overtime rate) x 20
  (overtime hours per week) x 26 weeks = $5,179.20

Second Period of Employment (December 1, 2021 – March 26, 2022):

- $11.98/hour (overtime rate) x 10 (overtime hours per week) x 16 weeks
  = $1,916.80

Total overtime compensation:   **$13,814.40.**

2.    *Retaliatory Discharge Damages*

Paz has presented evidence that during her Second Period of employment
with Defendants, she worked on average 50 hours per week.   Tr., 13, 21, 23-24, 26;
*see also* Doc. No. 129-1, ¶ 12; Doc. No. 134, at 6.   After Salsas terminated her
employment, Paz was "willing and able to work" but it took her 16 weeks to find a
new job.   Doc. No. 129-1, ¶ 11.   At the time of Paz's termination, the Florida

minimum wage was $10.00/hour, and therefore she seeks compensation in the form of $550.00 per week ($10.00/hour x 40 hours plus overtime at $15.00/hour x 10 hours) for 16 weeks, for a total of $8,800.00.   Doc. No. 134, at 8-9.   While Paz originally requested tips as part of her retaliation damages and utilized the tip credit methodology to calculate her damages, she has now abandoned that request, and instead seeks compensation under straight minimum wage and overtime wage rules.   *See* Doc. No. 129, at 8-9, 11-12; Doc. No. 129-1, ¶ 12; Doc. No. 134, at 8-9; Tr., 32-35.

Salsas has failed to refute Paz's retaliation claim.    And based on the evidence Paz has presented, the undersigned will recommend that the Court find that Paz is entitled to compensation on her FLSA retaliation claim in the amount of $8,800.00. *See* 29 U.S.C. § 216(b) (rendering employer "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages"); *Bosmeniel v. T.S.W. Residential & Com. Servs., Inc.*, No. 8:23-cv-00714-CEH-TGW, 2023 WL 7411542, at *6 (M.D. Fla. Oct. 27, 2023) (granting a motion for default judgment and awarding retaliation damages based on plaintiff's hourly rate, not based on lower federal minimum wage rate); *Vazquez*, 2020 WL 3211151, at *1 (utilizing Florida minimum wage rates to calculate retaliation damages for back pay

including unpaid overtime); *Persiyantseva v. Saint Petersburg Mkt., LLC*, No. 17-22177-CIV, 2018 WL 3730400, at *6 (S.D. Fla. May 3, 2018), *report and recommendation adopted*, 2018 WL 3730223 (S.D. Fla. May 25, 2018) (granting motion for default judgment and awarding back pay damages that included both minimum wage and overtime wages, calculated as the difference between what plaintiff would have made at former job versus what plaintiff made at new job); *see also Vaccara v. Custom Sounds, Inc.*, No. 3:08-cv-776-J-32JRK, 2010 WL 1223907, at *4 (M.D. Fla. Mar. 4, 2010) ("Courts have 'broad equitable powers' which can include 'awarding lost wages' for violations of the FLSA." (quoting *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 880 (2d Cir. 1988))).

### 3.    *Liquidated Damages*

"[E]mployees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith."   *Moore v. K&G Transp., Inc.*, No. 6:17-cv-1151-Orl-31DCI, 2017 WL 6762441, at *4 (M.D. Fla. Dec. 12, 2017), *report and recommendation adopted*, 2018 WL 264498 (M.D. Fla. Jan. 2, 2018) (citing *Ojeda–Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012)).   "[A]n employee is entitled to liquidated damages in an amount equal to the unpaid wages."   *Glanzrock*, 2009 WL 179634, at *2 (citing *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1573 (11th Cir. 1988)).   Here, by their default and failure to respond to Paz's motion for default judgment, Defendants admit that

they acted willfully in failing to pay Paz's wages for the hours at issue. Accordingly, the undersigned will recommend that the Court award liquidated damages in an equal amount to Paz's damages for her FLSA unpaid overtime claim. *See Glanzrock*, 2009 WL 179634, at *2.

As to Paz's FLSA retaliation claim, "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation . . . the payment of wages lost and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Accordingly, the undersigned will also recommend that the Court award liquidated damages in an equal amount to Paz's damages on her FLSA retaliation claim.  *See Ciapara v. Newline W P Servs., Inc.*, No. 6:22-cv-929-RBD-LHP, 2023 WL 5985783, at *9 (M.D. Fla. Aug. 15, 2023), *report and recommendation adopted*, 2023 WL 5983804 (M.D. Fla. Sept. 14, 2023) (awarding liquidated damages for FLSA retaliation claim at default judgment stage).

4.     *Attorneys' Fees*

The FLSA authorizes an award of attorney's fees and costs to plaintiffs who prevail on a claim to enforce the provisions of the FLSA.  *Glanzrock*, 2009 WL 179634, at *2 (citing 29 U.S.C. § 216(b)).  Paz originally requested $28,107.50 in attorney's fees, but has now reduced that amount by $53.25 to $28,054.25, to remove

several non-billable administrative tasks.  *See* Doc. No. 129, at 13; Doc. No. 129-2;
Doc. No. 134, at 10.   In support of these fees, Paz has submitted copies of her
attorney's billing records, along with a chart listing the experience for each attorney
and legal assistant who performed work in this case.   Doc. Nos. 129-2; 129-3.
Attorney R. Martin Saenz, Paz's lead counsel, also provided further information at
the February 26, 2025 evidentiary hearing.   Tr., 36-47.

Based on this information, at the time Paz retained Attorney Saenz, he was a
partner and owner of Saenz & Anderson, PLLC.   During the pendency of this case,
Attorney Saenz left that firm and opened up a second law firm The Saenz Law Firm,
P.A.   Tr., 36-37.   Attorney Saenz has been a licensed attorney since 2003, and he
practices primarily in Southern and Middle Districts of Florida in the area of labor
and employment law.   Doc. No. 129-3, at 1; Tr., 36-37.   Attorney Saenz's billable
rate was initially $400.00 per hour, which he increased in 2023 to $450.00 per hour.
*Id.*   Attorney Julisse Jimenez obtained her law license in 2008, and has extensive
experience in business litigation, commercial litigation, employment law, and
securities law in state and federal courts.   Doc. No. 129-3, at 1-2.   Her billable rate
originally was $400.00 per hour and also increased in 2023 to $450.00 per hour.   *Id.;*
*see also* Doc. No. 129-2.   Attorney Ilona Anderson was a partner at both firms, but
left in early 2023.   Tr., 37.   She became a licensed Florida attorney in 2006, and her
billable rate at the time of her departure was $400.00 per hour.   Doc. No. 129-3, at

3-4.   Attorney Aron Smuckler is a junior associate, licensed to practice in April 2020, with 4.5 years' experience in employment and FLSA litigation.   *Id.*, at 3. Attorney Smuckler's billable rate is $275.00 per hour.   *Id.*   Two legal assistants also worked on this case, and their billable rate is $75.00 per hour.   *Id.*, at 2-3.

Upon consideration of this information, as well as the undersigned's own experience, and in the absence of objection, the undersigned will recommend that the Court approve the above listed hourly rates as reasonable for attorneys and paralegals of similar experience within the Orlando Division of this Court.   *See, e.g.*, *Perez*, 2023 WL 2696182, at *4-5, *report and recommendation adopted*, 2023 WL 2691680 (M.D. Fla. Mar. 29, 2023) (awarding attorney rates of $400.00–$450.00 per hour and paralegal rates of $125.00 per hour in FLSA case, and noting that reasonable paralegal rates in the Middle District of Florida range from $90.00 to $125.00 per hour); *Rismay v. Alterations by Lucy & Crisp & Clean Dry Cleaning & More, LLC*, No. 6:20-cv-1357-GAP-EJK, 2022 WL 687125, at *2 (M.D. Fla. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 685662 (M.D. Fla. Mar. 8, 2022) (awarding $400.00 per hour in FLSA default judgment context for attorney with twenty years of experience based on the court's own expertise even absent independent evidence as to reasonableness); *see also Jackson v. Creation Maint. Inc.*, No. 6:23-cv-38-WWB-LHP, 2024 WL 1494306, at *8 (M.D. Fla. Feb. 21, 2024) (awarding rate of $275.00 for an associate in FLSA default judgment context).

With respect to the hours requested, Paz's billing records are somewhat confusing. However, at the evidentiary hearing Attorney Saenz explained that the billing records listed hours worked on this case at both law firms, that the hours do not overlap, and that two pages attached at the end (Doc. No. 129-2, at 21-22), were duplicates attached in error and should not be considered. Tr., 38-44. Attorney Saenz further explained that he has removed all time entries for clerical tasks, and the records reflect those deductions as "nonbillable" time entries. *Id.*; Doc. No. 129-2. Based on the undersigned's review of the records, and in the absence of any argument or objection to the contrary, the undersigned finds the hours listed on the billing records (with all nonbillable entries removed) to be reasonable. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)) (a fee opponent's failure to explain with specificity the particular hours he or she views as unnecessary or duplicative is generally fatal).

The undersigned will therefore recommend Paz be awarded $28,054.25 in attorneys' fees, and that the award be imposed jointly and severally against both Defendants. *See generally Weil v. Vescovi*, No. 6:05-cv-319-Orl-22KRS, 2007 WL 1128967, at *2 (M.D. Fla. Apr. 16, 2007) (noting that joint and several liability is appropriate under the FLSA, including as to attorney's fees and costs, but finding that it is appropriate to avoid duplicate recovery against multiple defendants).

### 5.    Costs

The FLSA mandates that in any action brought by an employee to enforce Sections 206 or 207 of the Act, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow . . . costs of the action."    29 U.S.C. § 216(b).    In FLSA cases, courts may award those costs permitted by 28 U.S.C. § 1920.    *See Glenn*, 841 F.2d at 1575 ("[N]othing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920.").

Paz originally requested $3,078.80 in costs, but upon questioning from the undersigned, *see* Doc. No. 126, at 6-7; Doc. No. 133, at 9, Paz reduced her requested costs to $2,387.50 for filing fees, transcripts, and interpreters.    Doc. No. 134, at 10; *see also* Doc. No. 129-2.    However, despite being given an opportunity to do so, Paz has not provided any evidence to support these expenses beyond vague entries on her billing records, several of which appear duplicative.    *See* Doc. No. 129-2, at 12-13, 19-20; *see also* Doc. No. 126, at 6-7; Doc. No. 133, at 9.    A review of the docket, however, confirms that Paz paid a $402.00 filing fee, which Paz is entitled to recover. *See* 28 U.S.C. § 1920(1); *see also Fam. Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) ("Fees of the clerk and marshal include filing fees and are clearly taxable." (citations omitted)).

Interpreter fees are also recoverable.  *See* 28 U.S.C. § 1920(6).  However, it appears from the billing records that Paz is seeking a $300.00 interpreter fee for the December 8, 2023 hearing and another $300.00 interpreter fee for the January 17, 2024 hearing.  Doc. No. 129-2, at 19.  But Paz is also seeking recovery of the $300.00 interpreter fee for the January 17, 2024 hearing in her separate motion for fees and costs that were levied as a sanction against Defendants and Attorney Blanchfield. *See* Doc. No. 130-1, at 2.  Because Paz cannot obtain double recovery, the undersigned will only recommend recovery of a single $300.00 interpreter fee with respect to the default judgment motion.

As for deposition transcripts, Paz's billing records list a "non-transcribed deposition of corporate representative" in the amount of $700.00, an "original transcript of corporate representative" in the amount of $720.00, and an unspecified deposition transcript in the amount of $565.85 with a date of August 15, 2023.  Doc. No. 129-2, at 13, 18.  Again, Paz provides no explanation or evidence to support these requested transcript fees beyond these vague record entries.

Costs for deposition transcripts "necessarily obtained for use in the case" are taxable.  28 U.S.C. § 1920(2).  It is clear that the deposition transcript of the corporate representative was "necessarily obtained" for this case – it was a key exhibit in Paz's summary judgment motion.  *See* Doc. Nos. 48, 48-2.  Thus, the undersigned will recommend recovery of $720.00 for the original deposition

transcript.   The undersigned will otherwise recommend that Paz's unexplained

requests for a "non-transcribed deposition of corporate representative" and the

unidentified August 15, 2023 deposition transcript be denied.   *See Watson v. Lake

Cty.*, 492 F. App'x 991, 996 (11th Cir. 2012) (explaining that the "district court must

decide the factual question of whether the deposition was necessarily obtained for

use in a case"); *NAACP v. Fla. Dep't of Corr.*, No. 5:00-cv-100-Oc-10GRJ, 2005 WL

6046076, at *2 (M.D. Fla. Mar. 24, 2005) ("As Defendant has failed to identify, much

less justify, the costs for the hearing and deposition transcripts it now seeks to

recover, Defendant's request for such costs is due to be denied.").[11]

In sum the undersigned will recommend that the Court award costs, jointly

and severally, in the total amount of $1,422.00.

## III.    SANCTIONS FROM JANUARY 17, 2024 HEARING

The Court awarded to Paz the reasonable expenses – to include travel and

attorney's fees and costs – incurred in preparing for and attending the January 17,

2024 evidentiary hearing.   Doc. No. 123.   *See also* Fed. R. Civ. P. 16(f)(2) ("[T]he

court must order the party, its attorney, or both to pay the reasonable expenses—

including attorney's fees—incurred because of any noncompliance with [Rule

---

[11] There are several other expenses listed on the billing records, including what
appear to be service of process fees.   Doc. No. 129-2, at 12-13.   But in her supplemental
briefing, Paz limits her request for costs to "filing fees, transcripts and interpreters," thus
the undersigned deems all other listed costs to be waived.   *See* Doc. No. 134, at 10.

16].").   Paz now seeks $3,301.50 in fees for 7.3 hours of Attorney Saenz's time at a rate of $450.00 per hour and .22 hours of paralegal time at a rate of $75.00 per hour.[12] Paz also requests $599.11 in costs, which includes a $300.00 interpreter fee and travel expenses.   Doc. No. 130; Doc. No. 130-1.   Neither Defendant nor Attorney Blanchfield have objected or otherwise responded to the requested fees or costs.

As discussed above, the undersigned finds the attorney hourly rates to be reasonable and in line with those customarily charged within the Orlando Division. The undersigned also finds the hours sought to be reasonable and appropriate. The undersigned further finds the requested expenses to be reasonable and necessary, and that neither the costs nor the attorney hours are duplicates of any fees or costs sought in the default judgment motion.

Accordingly, in the absence of any objection, the undersigned will recommend that the Court award to Paz and against the Defendants and Attorney Blanchfield, jointly and severally, fees in the amount of $3,301.50 and costs in the amount of $599.11.   *See Vaughn v. GEMCO2, LLC*, No. 6:17-cv-1713-Orl-41KRS, 2018 WL 6620600, at *4–7 (M.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, 2019 WL 1765051 (M.D. Fla. Apr. 22, 2019) (levying sanctions in the form of

---

[12] While the motion only lists $3,285.00 in fees, the attached billing records equate to total attorney and paralegal fees of $3,301.50, which is the number the undersigned utilizes.

reasonable expenses and attorney's fees under both Rule 16(f) and Rule 37(a) against defendant's counsel for failure to comply with a discovery order and case management and scheduling order, including failure to attend mediation, and finding counsel's failures were not substantially justified).

## IV.     RECOMMENDATION

For these reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Court do the following:

1.     **GRANT IN PART AND DENY IN PART** Plaintiff's Renewed Motion for Final Default Judgment Against Defendants Salsas of Titusville Corporation d/b/a Salsas Cocina Titusville a/k/a Salsas Mexican Restaurant and Jesus Valencia (Doc. No. 129);

2.     **ENTER** default judgment in favor of Plaintiff and against Defendants in the total amount of $74,705.05 as follows:

- $13,814.40 in wages on the unpaid overtime compensation claims (Counts I and II) jointly and severally against both Defendants;

- $13,814.40 in liquidated damages on the unpaid overtime compensation claims jointly and severally against both Defendants;

- $8,800.00 in unpaid back wages on the retaliation claim (Count III) against Defendant Salsas; and

- $8,800.00 in liquidated damages on the retaliation claim against Defendant Salsas;

- $28,054.25 in attorneys' fees, jointly and severally against both Defendants; and

- $1,422.00 in costs, jointly and severally against both Defendants

3.    **DENY** Plaintiff's Motion (Doc. No. 129) in all other respects.

4.    **GRANT** Plaintiff's Motion for Attorney Fees and Costs Against Defendants Salsas of Titusville Corporation d/b/a Salsas Cocina Titusville a/k/a Salsas Mexican Restaurant and Jesus Valencia (Doc. No. 130), and award Plaintiff fees in the amount of $3,301.50 and costs in the amount of $599.11, to be paid jointly and severally by Defendants and Attorney Robert E. Blanchfield.

5.    **DIRECT** the Clerk of Court to issue judgments consistent with the Court's ruling on this Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 23, 2025.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy